560 So.2d 545 (1990)
STATE of Louisiana
v.
Brandt Anthony McGUIRE.
No. KA 89 0898.
Court of Appeal of Louisiana, First Circuit.
April 10, 1990.
*547 Mark D. Rhodes, Asst. Dist. Atty., Houma, for plaintiff and appellee, State.
Anthony P. Champagne, Office of Indigent Defenders, Houma, for defendant and appellant, Brandt Anthony McGuire.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
Defendant was charged by bill of information with simple burglary. La.R.S. 14:62. Defendant pled not guilty, and, after trial, the jury returned with the responsive verdict of attempted simple burglary.[1] Defendant brings this appeal urging:
1. The court erred in denying defendant's motion to suppress an oral inculpatory statement.
2. The court erred in allowing a prosecution witness to give opinion testimony over defendant's objection.
3. The court erred in allowing the admission of a prejudicial statement made by defendant.
4. The verdict of the jury was contrary to the law and the evidence.
5. The court erred in denying defendant's motion for post-verdict judgment of acquittal.
6. The court erred in denying defendant's motion for new trial.
7. The court erred in that the sentence imposed was excessive and improper under the circumstances and amounted to cruel and unusual punishment.
On January 16, 1987, at approximately 1:30 p.m., the home of Mr. and Mrs. Jeff Barrilleaux, located at 204 Hedgeford Drive in Gray, Louisiana, was burglarized. Mr. John Wayne Jackson, who resides at 210 Hedgeford Drive, testified that on the date in question he saw a red and white station wagon park near his neighbors' house. Jackson witnessed two black males, both approximately six feet in height and both wearing blue jeans and tennis shoes, exit the vehicle and break into his neighbors' house. He then telephoned the sheriff's department and went outside, started his truck and pulled it into his neighbors' driveway in order to block the exit of the burglars' vehicle. At that time, the burglars were exiting near the back of the house, and Jackson got out of the truck with a shotgun and ordered them to stop. The perpetrators began to run; and Jackson shot into the air once, and directly at them four times, but missed. The perpetrators disappeared through a field behind the house. The vehicle in which the perpetrators had arrived remained blocked in the driveway of the burglarized residence.
Deputy Ledeaux of the Terrebonne Parish Sheriff's Office was dispatched to the Hedgeford Drive area shortly after the crime occurred. Upon his arrival, Mr. Jackson pointed out the perpetrators' vehicle; and Ledeaux ran a license check on the vehicle and discovered that it belonged to a Clarence Francis residing at 617 Linda Ann Avenue in Gray, Louisiana. Ledeaux proceeded to that address, identified the owner of the vehicle as Clarence Francis and was informed that defendant had been driving the vehicle. Ledeaux then returned to the scene of the crime.
Deputy Ronald Willet of the Terrebonne Parish Sheriff's Office was also dispatched to the crime scene. He, along with the Deputy Ledeaux, observed signs of forced entry at the burglarized residence. After the scene was secured, Willet went back on patrol and encountered a black male immediately outside of the Hedgeford Drive area. Willet testified that the man was carrying a gas can and flagged him down. Willet further testified that the man was wearing blue jogging pants and tennis shoes. The man informed Willet that he was going to get his mother's car which had run out of gas. Willet transported the man to the crime scene and the man identified the vehicle blocked in the driveway as his mother's vehicle. This man, who was subsequently identified as defendant, was advised of his rights and placed under arrest.
*548 Sheriff Jerry Larpenter, at that time the Chief of the Uniform Patrol Division of the Terrebonne Parish Sheriff's Office, assisted in the investigation at the crime scene. He testified that it had recently rained in the area and that the soil was wet. He further stated that he observed two sets of footprints near the burglarized house and that one appeared to be a tennis shoe, while the other looked like some sort of cleated shoe. Sheriff Larpenter stated that one of the footprints was very well defined and easily identifiable as made by a Reebok tennis shoe. After defendant had been arrested, Larpenter asked him for one of his shoes, which was a Reebok tennis shoe. Larpenter took the shoe to one of the flat soled prints in the mud, and it was a perfect match.
When Larpenter questioned defendant, he replied that he had been joy-riding in the red and white station wagon while smoking a marijuana cigarette and that his vehicle had run out of gas. Larpenter testified that defendant had a gas can with him when he arrived at the crime scene with Officer Willet. Larpenter further stated that he checked the gas can and it was empty. Larpenter stated that he also started defendant's vehicle and it had gasoline in it.
Finally, the victim, Jeff Barrilleaux testified that no one was home on January 16, 1987, but that when he returned he noticed that someone had broken the window to his bedroom, had gone inside of his house, and had taken some jewelry and a handgun.

ASSIGNMENTS OF ERROR NOS. ONE AND THREE
By way of his first assignment of error, defendant claims that the trial court committed error in denying his motion to suppress an inculpatory statement. In his motion to suppress, defendant asserted that statements allegedly made by him were obtained without the benefit of constitutional guarantees and that such statements were not freely and voluntarily given with the assistance or advice of counsel. In his brief to this Court, however, defendant argues only that the inculpatory statement was evidence of other crimes and should have been suppressed on that ground. Thus, the voluntariness of the statement is beyond the scope of defendant's assignment of error, and is, therefore, not properly before this Court. La.C. Cr.P. art. 920; State v. Foster, 510 So.2d 717 (La.App. 1st Cir.1987), vacated in part on other grounds, 519 So.2d 138 (La.1988).
Although not addressed in his brief to this Court, we go on to consider the propriety of the trial court's denial of defendant's motion to suppress inculpatory statements on the grounds of an involuntary waiver of his right to remain silent without advice of counsel.
In reviewing the admissibility of inculpatory statements, the rules governing the admissibility of confessions are applied. State v. Mason, 447 So.2d 1134 (La. App. 1st Cir.1984). Before an inculpatory statement may be introduced into evidence, the state has the burden of affirmatively proving, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. State v. Kent, 489 So.2d 1354 (La.App. 1st Cir.1986). Additionally, the state must show that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Kent, 489 at 1357. However, the admissibility of an inculpatory statement is in the first instance a question for the trial court; and its conclusion on credibility and the weight of testimony relating to the voluntariness of a statement will not be overturned on appeal unless it is not supported by the evidence. State v. Buchanan, 439 So.2d 576 (La.App. 1st Cir. 1983).
At the hearing on the motion to suppress, Sheriff Jerry Larpenter testified that he participated in the investigation of the crime herein and that he encountered defendant when defendant was returned to the crime scene. Larpenter indicated that Deputy Willet gave defendant his Miranda warnings. Larpenter testified that defendant indicated that he understood his Miranda rights. Larpenter stated that defendant *549 agreed to waive his rights against self-incrimination and discuss the case with him. Larpenter testified that neither he nor Deputy Willet coerced the defendant nor used any intimidation, force or violence to compel him to waive his Fifth Amendment privilege against self-incrimination in giving a statement. Larpenter concluded that no gratuity, benefits, leniency of sentence or immunity of prosecution were offered to defendant in order to induce him to make a statement. Further, Larpenter stated that defendant never asked for the assistance of an attorney.
Herein, the state presented testimony that defendant's inculpatory statement was voluntary and not the result of coercion, intimidation, inducements, or promises. Further, the testimony also indicated that defendant was given a Miranda warning prior to giving a statement. A trial court's conclusion on the admissibility of an inculpatory statement is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Buchanan, 439 So.2d at 586. After a careful review of the evidence presented, we find the trial court's denial of defendant's motion to suppress his inculpatory statement is supported by the evidence; and, therefore, we find no error in the trial court's ruling.
By way of Assignment of Error No. Three, defendant argues that Sheriff Larpenter's testimony revealing defendant's inculpatory statement included "other crimes" evidence. Defendant further argues that written notice of the state's intent to introduce other crimes evidence must be given in all cases except where the other crimes evidence is part of the res gestae or is used to impeach defendant's testimony. See La.C.Cr.P. art. 720. Defendant contends that possession of marijuana is dissimilar to burglary; therefore, La.R.S. 15:445[2] does not apply. Defendant further asserts that the crime of possession of marijuana would not answer any questions regarding knowledge, intent or system; therefore, La.R.S. 15:446[3] is inapplicable. Finally, defendant points out that he did not take the witness stand; therefore, the impeachment exception does not apply.
La.C.Cr.P. art. 720 provides in part that, upon motion of the defendant, the court shall order the state to inform defendant of its intent to offer evidence of the commission of any other crime admissible under La.R.S. 15:445 or La. R.S. 15:446. However, the state shall not be required to inform the defendant of its intent to offer evidence of offenses which are part of the res gestae or convictions used to impeach the defendant's testimony. Initially, we note that defendant filed a motion for discovery and the state replied that it did not intend to introduce other crimes evidence. Further, a review of the record reveals that Sheriff Larpenter's first reference to defendant's statement regarding possession of marijuana was unsolicited. Larpenter's second reference, however, was not contemporaneously objected to by defendant.
Unsolicited and nonresponsive testimony is not chargeable to the state. State v. Fowlkes, 352 So.2d 208 (La.1977); State v. Jack, 554 So.2d 1292 (La.App. 1st Cir.1989). Further, an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. See La.C.Cr.P. art. 841. Considering the *550 context within which the officer's testimony was given, and the ambiguous and innocuous reference to other crimes evidence, we conclude that the reference did not prejudice defendant's right to a fair trial and, accordingly, find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NO. TWO
In Assignment of Error No. Two, defendant contends that the trial court erred in allowing Sheriff Larpenter to give opinion testimony over defendant's objection. At trial, Sheriff Larpenter testified that the shoe prints found near the burglarized home matched perfectly with the shoes defendant was wearing at the scene of the crime. Defendant contends that Sheriff Larpenter was not qualified as an expert and that his testimony regarding the shoe prints should have been excluded. The following excerpt contains the objectionable testimony:
Q In that area were you able to identify any footprints?
A I observed two sets of footprints.
Q What type were they?
A One appeared to be a tennis shoe and the other appeared to be a tennis shoe but the plastic cleat type.
Q It had little prongs on it?
A Prongs on it.
Q And the other shoe appeared to be a tennis shoe?
A Yes. With markings on it.
Q Now, I am going to show you what has previously been marked as State exhibit 2, and ask you
MR. CHAMPAGNE: Excuse me, Your Honor. At this point, I'd like to have the jury removed.
THE COURT: Mr. Bailiff, would you take the jury into the jury deliberating room. Ladies and gentlemen, we have some technical matters to discuss. We will bring you back in a few moments.
(Jury excused from the courtroom.)
THE COURT: Okay, go ahead, Tony.
MR. CHAMPAGNE: Your Honor, I think it is very obvious that what the State is just now planning to do is have this officer testify in such a fashion as to make some kind of identification or a linkup between a print that was found at the scene and this particular item here which has not yet been introduced into evidencea shoe. I would object to any questioning along those lines for these reasons. Number one, the best evidence would have been the actual print itself, so that the jury could observe it. This way the jury has to listen to Sheriff Larpenter say what he saw and then come back and repeat it. I think the best evidence would have been the actual taking of a cast of the print itself so that observation could be made of the cast and of the shoe by the jury. Secondly
THE COURT: First, number one, that doesn't impress me at all. The best evidence would be a video camera procedure of the entire burglary and everything else. So, that argument doesn't impress me. Number two.
MR. CHAMPAGNE: Secondly, I don't think that this officer can be qualified in any area such as forensics or anything like that that would allow him to testify that the print he saw matches positively this shoe. I don't think he is qualified. He is not an expert in that area. I think you need an expert to be qualified in that area to be able to tell this jury in my opinion that is the same print that came from that shoe, because it calls for opinion testimony. The law is clear that you shall not testify to opinion unless you have been qualified as an expert in whatever particular field you need to be qualified in to be able to give that opinion testimony.
. . . .
THE COURT: We;ve [sic] had experts in a lot of things in this courtroom, and I don't think we have to go to the absurdity of having an expert in tennis shoe prints in here. I think that is common knowledge. Your objection is overruled. Bring the jury back in please.
The general rule that a witness can testify only as to the facts within his *551 knowledge and may not testify as to any impressions or opinions that he may have is set forth in La. R.S. 15:463.[4] However, it has been determined that, where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inference provided he also states the observed facts. State v. Moten, 510 So.2d 55 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987).
In the instant case, Sheriff Larpenter's observations provided an adequate factual basis for his inference that defendant's tennis shoe matched the shoe prints found in the mud near the burglarized home. Accordingly, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. FOUR AND FIVE
By means of these assignments of error, defendant contends that the evidence was insufficient to support the conviction herein. Assignment of error number five raises this issue by citing error in the trial court's denial of defendant's motion for post-verdict judgment of acquittal. La.C. Cr.P. art. 821. Further, through assignment of error number four, defendant contends that the verdict was contrary to the law and the evidence. We consider this argument to be a challenge to the sufficiency of the evidence. See State v. Jones, 496 So.2d 638 (La.App. 1st Cir.1986).
When considering the sufficiency of the evidence raised by a motion for post-verdict judgment of acquittal, the standard of review is whether or not, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moore, 444 So.2d 253 (La.App. 1st Cir. 1983).
"Simple burglary is the unauthorized entering of any dwelling ... with the intent to commit a felony or any theft therein...." La.R.S. 14:62. Further, any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of intent to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La.R.S. 14:27.
In the instant case, John Jackson, the neighbor of the victims, testified that he saw two black males drive up to his neighbors' house in a red and white station wagon and exit the vehicle. Jackson further testified that he saw the men break into his neighbors' house and go inside. Jackson used his truck to block the perpetrators' vehicle in his neighbors' driveway and saw the perpetrators exit the house and run away. Deputy Ledeaux testified that he arrived at the crime scene shortly thereafter and that Mr. Jackson pointed the red and white vehicle out to him as the perpetrators' vehicle. Ledeaux stated he ran a license check on the vehicle, which indicated it belonged to a Clarence Francis. Ledeaux went to the Francis' address and was informed that defendant was Mr. Francis' stepson and that he had been driving the vehicle. Deputy Ronald Willet testified that he was called to the crime scene to investigate. He further stated that, when he was leaving the scene, he was flagged down by a black male carrying a gas can. Willet said the man asked him for a ride to the crime scene because his mother's car had run out of gas there. Sheriff Larpenter testified that he questioned defendant when defendant arrived at the scene with Deputy Willet and that defendant told him he was joy-riding on Hedgeford Drive when his vehicle ran out of gas. Sheriff Larpenter stated that there were footprints in the mud around the burglarized house and defendant's tennis shoe matched the prints perfectly. Further, *552 John Jackson told the police that the black male who arrived with the gas can looked like one of the perpetrators and was wearing similar clothing. The victim, Jeff Barrilleaux, testified that some jewelry and a handgun were missing from his home after the incident. Finally, Hedgeford Drive is a dead end street; and, when Sheriff Larpenter checked the gas can defendant was carrying, it was empty. When he started the red and white vehicle, he discovered it contained gasoline.
Our review of the record indicates that the evidence was sufficient to support a conviction of the charged offense of simple burglary. Therefore, a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could clearly have concluded that the state proved beyond a reasonable doubt that defendant was guilty of attempted simple burglary. Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. SIX
Defendant argues that the trial court erred in denying his motion for a new trial. Defendant argues that, under the facts and circumstances of this case, he did not receive a fair trial. Defendant asserts that there was an accumulation of errors by the trial court and that, therefore, a new trial should have been granted in the interest of justice. Also, defendant reiterates under this assignment of error his contention that the finding by the jury was contrary to the law and the facts brought out at trial.
First of all, we have rejected, under assignments of error numbers four and five, defendant's contention that the evidence was insufficient. Moreover, we note that only the weight of the evidence, and not the legal insufficiency of the evidence, can be reviewed by the trial court in a motion for new trial under La.C.Cr.P. art. 851(1). State v. Vessell, 496 So.2d 576 (La.App. 1st Cir.1986), writ denied, 500 So.2d 420 (La. 1987).
Additionally, in brief, defendant does not specify which errors the trial court allegedly committed. In any event, we have addressed defendant's specific complaints of error in assignments of error numbers one, two and three. Further, we note that defendant's assertion in brief that the trial court erred by not granting him a new trial, on the basis that the ends of justice would be served thereby, presents nothing for this Court to review. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). In any event, the trial court's decision on a motion for new trial will not be disturbed absent a showing of clear abuse of discretion. State v. Smith, 504 So.2d 1070 (La.App. 1st Cir.1987). For the reasons enumerated above, we find no abuse of discretion by the trial court in this instance. Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. SEVEN
Finally, defendant asserts that the trial court erred in imposing an excessive sentence in violation of Art. I, § 20, of the Louisiana Constitution.
Art. I, § 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Excessiveness of sentence is a question of law which is reviewable. See State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court has wide sentencing discretion, and a sentence within statutory limits will not be set aside absent an abuse of discretion. State v. Robinson, 525 So.2d 712 (La.App. 1st Cir.1988). La.C. Cr.P. art. 894.1 requires the trial court to weigh both aggravating and mitigating circumstances in imposing sentence. While the trial court is not required to articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in art. 894.1. State v. Robinson, 525 So.2d at 715.
Having been convicted of attempted simple buglary, defendant was exposed to a maximum sentence of six years and a maximum fine of $1,000. See La.R.S. 14:27 and 62. He received six years at hard labor, but no fine was imposed. Maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense and for the worst kind of offender. State v. Robinson, 525 So.2d at 716.
*553 In imposing sentence, the trial court noted that defendant had a prior conviction for simple burglary. The court noted that the evidence actually indicated that defendant had in fact committed simple burglary. The court specifically considered and rejected a suspended sentence or probation, concluding that defendant was likely to commit another crime. The court went on to state that defendant was in need of correctional treatment in a custodial environment that could best be provided by a commitment to an institution. The court also noted that a lesser sentence would deprecate the seriousness of the crime charged herein. The court noted that, although defendant's criminal conduct did not cause any serious bodily harm, it could have. The court noted that defendant must have contemplated that his criminal conduct would cause or threaten serious harm and the court found no mitigating circumstances. The court further noted that defendant did not act under any strong provocation and that there were no substantial grounds tending to excuse or justify defendant's criminal conduct. Finally, the court found that the victim did nothing in this case to induce or facilitate defendant's commission of the crime herein. In light of the reasons for sentencing given by the trial court, we find defendant's sentence to be neither excessive nor an abuse of the trial court's discretion. Thus, this assignment of error lacks merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] See La.R.S. 14:27 and 62 and La.C.Cr.P. art. 814(A)(44).
[2] La.R.S. 15:445 provides:

In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction.
La.R.S. 15:445, which was in effect at the time of the trial herein (September 21, 1988), was repealed by Acts 1988, No. 515, § 8, effective January 1, 1989.
[3] La.R.S. 15:446 states:

When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged.
La.R.S. 15:446 has also been repealed by Acts 1988, No. 515, § 8.
[4] La.R.S. 15:463 states:

Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.
La.R.S. 15:463 has also been repealed by Acts 1988, No. 515, § 8.